UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL FERRO, by his guardians | : | |
| CHISTOPHER FERRO and | : | No.: |
| ANGELA   FERRO, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| CENTRAL YORK SCHOOL | : | |
| DISTRICT, | : | |
| | : | |
| Defendant | : | |

## NOTICE OF REMOVAL

AND NOW, this 3rd day of October, 2023, comes the Defendant, the Central York School District ("the District") by and through its attorneys, Gregory W. Bair, II, Esquire, Brooke E. D. Say, Esquire, Gareth D. Pahowka, David M. Walker, Esquire, and the law firm of Stock and Leader, LLP, and hereby provides notice of removal of the above-entitled civil action, from the Court of Common Pleas of York County, Pennsylvania, to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1441, 28 U.S.C. § 1443, and 28 U.S.C. § 1446, a statement of which follows:

1. On or about September 29, 2023, Plaintiffs, Michael Ferro ("Michael"), by his guardians, Christoper Ferro and Angela Ferro (collectively, "the Ferros") filed a Complaint in the Court of Common Pleas of York County, Pennsylvania styled

*Michael Ferro, by his guardians Christopher Ferro and Angela Ferro, v. Central York School District,* Case No. 2023-SU-002645 (the "Complaint").

2. Pursuant to 28 U.S.C. §1446(a), a true and correct copy of the Complaint is attached as **Exhibit A**.

3. In addition to the Complaint, the Ferros concurrently filed "Plaintiff's Emergency Petition for Special or Preliminary Injunction," a true and correct copy of the Ferros' Emergency Petition for Special or Preliminary Injunction is attached as **Exhibit B.**

4. The District accepted service on October 3, 2023.

5. The District has not filed a responsive pleading in the Court of Common Pleas of York County.

6. Pursuant to 28 U.S.C. § 1441(a), removal of an action originally filed in state court is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See* 28 U.S.C. § 1441(a).

7. Further 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331 (relating to federal question).

8. In removing this matter to this Court, the District does not intend to waive any defenses they have to the action, including without limitation improper service, personal jurisdiction, and/or venue.

## FEDERAL QUESTION

9. "The party invoking federal jurisdiction bears the burden of establishing" that jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

10. This Honorable Court has recognized that the general rules governing removal by a defendant in a federal question matter have been well articulated in *Schultz v. Coral Gables Federal Savings & Loan Association,* 505 F. Supp. 1003, 1008 (S.D. Fla. 1981). *See Martin v. Wilkes-Barre Pub. Co.*, 567 F. Supp. 304, 307 (M.D. Pa. 1983).

11. *In Martin v. Wilkes-Barre Pub. Co., 567 F. Supp. 304, 307-308,* the United States District Court for the Middle District of Pennsylvania recognized that, in all cases removed for federal questions:

> Federal law must be an "essential" element of the plaintiff's cause of action. *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S. Ct. 96, 97, 81 L. Ed. 70 (1936). Second, the federal question which is the predicate for removal "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* at 113, 57 S. Ct. at 98. As a general rule then, plaintiff's state court pleadings control removability. *See Paxton v. Weaver*, 553 F.2d 936 (5th Cir.1977). Artful pleading cannot, however, be used to conceal an essentially federal claim. . . . **The accepted rule is that upon removal the court should inspect the complaint carefully to determine**

**whether a federal claim is necessarily presented by plaintiff, even if plaintiff has couched his pleadings exclusively in terms of state law**. *See In Re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980). Third, the federal question may not be inferred from a defense asserted or one expected to be made. *See Gully, supra*, 299 U.S. at 113, 57 S. Ct. at 98. Fourth, the federal question raised must be a "substantial" one. *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S. Ct. 1372, 1378, 39 L. Ed. 2d 577 (1974). Finally, the party seeking removal bears the burden of satisfying each of these preconditions. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28, 94 S. Ct. 1002, 1003, 39 L. Ed. 2d 209 (1974); *Wolgin v. State Mut. Investors*, 442 F. Supp. 974, 975 (E.D. Pa.1977). *Martin v. Wilkes-Barre Pub. Co.*, 567 F. Supp. 304, 307-308 (M.D. Pa. 1983) *citing Schultz v. Coral Gables Federal Savings & Loan Association,* 505 F. Supp. 1003, 1008 (S.D. Fla. 1981).  (emphasis added).

12. The Ferrros' Complaint invokes issues contemplated by this Honorable Court's federal question jurisdiction.

13. The Ferros allege in their Complaint that the District maintains "unfair and inequitable treatment of special needs students, including its failure to provide special needs students with equal protection under the law and its systematic expulsions of special needs students without cause and without due process[ ][,]" specifically, Michael Ferro, who had been a student at the District since kindergarten. Complaint at ¶¶ 3, 10.

14. The predicate for the Ferros' claims arises out of edicts promulgated by the Pennsylvania Department of Education (hereinafter "PDE") following the settlement of a class action lawsuit against PDE in the Eastern District of

Pennsylvania at Case No. 2:23-cv-02644 ("the E.D. PA lawsuit").  Complaint at ¶ 21.

15. In the E.D. PA lawsuit, the plaintiffs challenged PDE's aging-out policy (previously set at age twenty-one (21)) as being inconsistent with the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1440 *et seq.*("IDEA").  Complaint at ¶ 22.

16. As the Ferros point out in their Complaint, "[p]rior to 2023, special needs students were treated the same as those without disabilities; if they turned twenty-one in the middle of a school year, they would be permitted to finish the year but would have aged-out of the public school system for the following school year."  Complaint at ¶ 20.

17. As a result of PDE having come to a settlement with the plaintiffs in the E.D. PA lawsuit, PDE entered into a settlement agreement with those plaintiffs and unilaterally, and without legislative guidance, oversite, or authority, amended its aging-out policy to allegedly be in compliance with IDEA – effectively offering students with disabilities a free appropriate public education ("FAPE") until a student turns twenty-two (22).  Such revisions to PDE policies were to be applied retroactively to students who had previously aged-out at age twenty-one (21) but had not yet attained the age of twenty-two (22).   Such policy revisions expressly cited

to IDEA rights of eligibility, enrollment, and a free appropriate public education (FAPE) in a child's resident school district. Complaint at ¶ 25.

18. The Ferros' Complaint alleges that Michael Ferro was born on September 8, 2001. Complaint at ¶ 5.

19. The 2023-2024 school year began on September 5, 2023. Complaint at ¶ 29.

20. At the beginning of the 2023-2024 school year Michael had not yet attained the age of twenty-two (22). Complaint at ¶ 26.

21. The Ferros' Complaint alleges that following PDE's settlement of the E.D. PA lawsuit, the Ferros were contacted by PDE, who advised the Ferros that Michael was eligible to return to the District for the 2023-2024 school year. *Id*.

22. On September 8, 2023, Michael turned twenty-two (22). Complaint at ¶ 30.

23. The Ferros' Complaint alleges that following Michael's twenty-second birthday, the District refused to permit Michael to finish the school year. Complaint at ¶ 33.

24. The Ferros allege that "[r]ather than allowing Michael to finish the school year (as would be done for a regular-education student), the District expelled Michael without hearing on September 8, 2023. Complaint at ¶ 31.

25. The Ferros' Complaint asserts three (3) causes of action relating to the alleged disparate treatment of Michael, as a special needs student, by the District.

26. Count One of the Complaint asserts a due process violation under the Pennsylvania Constitution. Complaint at ¶¶ 38 – 42.

27. Count Two of the Complaint asserts an Equal Protection Violation under the Pennsylvania Constitution, asserting that students with disabilities are treated less favorably than students without disabilities. Complaint at ¶¶ 43 – 52.

28. Count Three of the Complaint alleges a violation of Central York School District Policy, wherein the Ferros assert that Michael was expelled without following required due process procedures. Complaint at ¶¶ 53 – 60.

29. Plaintiffs have intentionally couched their claims exclusively in terms of state law to avoid removal.

30. A Federal claim is necessarily presented here because the essence of Plaintiffs' claims is the ability of Michael to continue to receive special education services and receive a FAPE under the IDEA.

31. The PDE settlement agreement upon which the Ferros base their view that Michael is entitled to continue to receive special education services relates entirely to an interpretation of Federal law, the IDEA. *See* Complaint at ¶ 22.

32. In setting out its facts as a basis for Michael's right to continue his education beyond the date he turns twenty-two (22), Ferros' Complaint repeatedly

references and relies upon the IDEA and its implementing regulations, as the source of these rights. *See* Complaint at ¶¶ 22 – 26. Yet, once asserting its claims against the District, the IDEA is omitted and, instead, such claims are presented exclusively in terms of state law. Complaint at ¶¶ 38 – 60.

33. Further, in pleading their request for injunctive relief, the Ferros attached a provision of the implementing regulations of the IDEA. *See* Exhibit A to the Plaintiff's Emergency Petition for Special or Preliminary Injunction, attached hereto as Exhibit B.[1] Those regulations expressly reference the procedural safeguards and due process rights available for Michael under the IDEA, as implicated in Count Three of the Ferros' Complaint.

34. The congressional intent of the IDEA is to create a comprehensive scheme for the delivery of special education services and to ensure the provision of a FAPE. Further, the IDEA contains a comprehensive process for the resolution of disputes through required administrative procedures. 34 C.F.R. §§300.500-537.

35. A federal district court maintains federal question jurisdiction under 28 U.S.C. §1331 pursuant to express authorization in the IDEA. 20 U.S.C. §1415 (i)(2)(A); *See G.W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 469 (3d Cir. 2022)[2].

---

[1] Plaintiffs cite to 34 C.F.R. § 300.533. This regulatory provision relates to appeals arising from the administrative due process hearings that occur as part of IDEA's required administrative procedures. It is illogical that Plaintiffs can rely on such regulatory provisions to support their request for injunctive relief of claims presented entirely under state law, when, in fact, they have failed to exhaust the required administrative procedures under the IDEA. Their reliance on this provision further supports the fact that the Complaint contains an essentially Federal claim.

[2] Congress enacted the IDEA "to ensure that all children with disabilities have available to them a [FAPE]." *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir 2021) (quoting 20 U.S.C. § 1400(d)(1)(A)). "'The IDEA offers

36. In each of the Ferros' *ad damnum* clauses, the Ferros seek, *inter alia,* a declaration "that the Pennsylvania policy expelling special needs students on their 22nd birthday is unconstitutional and void." *See* Complaint at *ad damnum* clauses.

37. Clearly, the Ferros' claims against the District are predicated on theories that Michael's rights under the IDEA have been violated. This is clear through the specific relief sought by the Ferros – restore Michael as a student to the District, via his enrollment and via implementation of the placement that implements his Individualized Education Program (IEP). This restoration of his previous placement could only be accomplished through the express rights contained in the IDEA and the procedural safeguards outlined therein to protect these rights. 34 C.F.R. §§300.500-537.

---

federal funds to States in exchange for a commitment[ ] to furnish' a FAPE 'to all children with certain physical or intellectual disabilities.'" *Id.* (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017)) (alteration in original). The IDEA directs States to "implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). "These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing" addressing, among other things, "the provision of a [FAPE] to [their] child." *Id.* (quoting 20 U.S.C. § 1415(b)(6)(A)).

"Following completion of the IDEA's administrative process . . . the IDEA affords '[a]ny party aggrieved by the findings and decisions' made during or pursuant to the impartial due process hearing an opportunity for judicial review." *Id.* (quoting § 1415(i)(2)(A)) (alteration in original). Accordingly, "the IDEA 'confers upon disabled students an enforceable substantive right to public education in participating States.'" *Y.B.*, F.4th at 198 (quoting *Honig v. Doe*, 484 U.S. 305, 310, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)). *G.W. v. Ringwood Bd. of Educ.*, 28 F.4th 465, 469 (3d Cir. 2022). The Ferros have failed to avail themselves of the administrative remedies available to them by not first pursing an impartial due process hearing. To the extent the Ferros maintain a claim, it would invoke federal question jurisdiction of this Court.

38. The resolution of the Ferros' claims require the application and interpretation of federal law, and federal decisional law, making this case one that squarely falls within this Court's exclusive federal question jurisdiction.

39. The ability to judicially interpret the IDEA requirements is vested in federal courts. *Ullmo v. Gilmour Acad.,* 273 F.3d 671, 680 (6th Cir. 2001). ("The IDEA is a federal statute. Any claim arising under the IDEA is therefore subject to the jurisdiction of the district court.")

40. Despite this, the Ferros attempt to avoid removal of this matter by cloaking Michael's federal claims under the heading of state law claims. Federal courts have consistently held that no provision of state law may conflict with the IDEA's federal mandates. *See K.L. v. R.I. Bd. of Education,* 907 F.3d 639, 652 (1st Cir. 2018), and *A. R. v. Conn. State Bd. of Educ.,* 2020 U.S. Dist. LEXIS 101866, 38 (D. Conn. August 24, 2023).

41. In *Gunn v. Minton,* 568 U.S. 251, 133 S.Ct. 1059, 185 L. Ed. 2d 72 (2013) the United States Supreme Court set forth a four-part test to determine when federal jurisdiction will lie over a state law claim. This four-prong test was reiterated by this Honorable court in *Fouad v. Milton Hershey Sch. & Sch. Trust,* 202 U.S. Dist. LEXIS 177735 (M.D. Pa. 2020). In each of those case, the Court determined that federal jurisdiction over a state law claim will lie if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

in federal court without disrupting the federal-state balance approved by Congress. *Id.* at 22, citing *Gunn* at 258.

42.     A case "arises" under federal law if "a well-pleaded complaint established either that federal law creates the cause of action *or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.*" Empire Healthchoice Assurance, Inc. McVeigh, 547 U.S. 677, 690, 126 S. Ct. 2121, 165 L.Ed. 2d 131 (2006) quoting *Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Tr. For S. Cal.,* 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (emphasis added); *see also, Caeser v. Greentree Transp. Co.,* 2023 U.S. Dist. LEXIS 162057; \_\_\_F. Supp. 3d\_\_\_\_ (E.D. Pa 2023).

43.     A plain reading of the Ferros' Complaint indicates that the redress sought can only be provided through the application and interpretation of federal law, the IDEA.  More specifically, he desires to re-enroll at the District for the express and sole purpose of receiving special education services, with rights protected in IDEA.  Consequently, a federal issue is necessarily raised.

44.     Under the provisions of the IDEA, education for special needs students is only available to students to age 21.  20 U.S.C. §1412(a)(1)(A); 34 C.F.R. 34 C.F.R. §300.101.  Pursuant to the legal underpinnings of the settlement agreement in the E.D. Pa. lawsuit, Michael's IDEA rights only extended to the day before his 22nd birthday, because federally funded education is provided to certain adults in the

Commonwealth to age 22.  20 U.S.C. §1412(a)(1)(A)-(B).  IDEA provides that if a state provides a free public education to any person in the 18-21 age group, it must also provide a FAPE to children with disabilities through the same time period.  20 U.S.C. § 1412(a)(1)(B).

45. Michael seeks reinstatement as a student and a return to his prior placement in the District's educational program.  Complaint at ¶ 37.  This question raises an actual dispute under the provisions of the IDEA.  Specifically, the Pennsylvania Department of Education's interpretation and implementation of the IDEA, following their revised guidance and following the resolution of the E.D. Pa. lawsuit – as applicable to Michael – creates an actual dispute of a Federal issue.  *See* Complaint at ¶ 22.

46. A state court has no jurisdiction to compel the District to violate federal law in the event it is determined that Michael should be restored as a student to the District.  Thus, interpretations of the IDEA are matters of federal, rather than state law.  *See*, *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639, 645 (1st Cir. 2019).

47. In order for federal jurisdiction to lie over a state law claim, it must be one that turns on substantial questions of federal law.  *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308. at 312 (2005).

48. The *Grable* Court instructs that the "substantiality inquiry" looks to the importance of the issue to the federal system as a whole.  As noted above, the

congressional intent of the IDEA is to create a comprehensive scheme for the delivery of special education services through the creation of a comprehensive process for the resolution of disputes involving the education of students with disabilities.

49. In the instant case, students with disabilities are only afforded instruction through the day before their 22nd birthday due to a district's receipt of federal funds under the IDEA statute. Moreover, Michael's individual rights and determination of whether he is entitled to a FAPE can only be addressed through the comprehensive process of dispute resolution provided by the IDEA.[3] Thus, this case presents a substantial inquiry into issues of federal law, specifically, the application and implementation of the IDEA as have been interpreted in the policy changes made by the Pennsylvania Department of Education via the settlement agreement in the E.D. Pa. lawsuit.

50. This matter is clearly capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

51. The federal court is the intended forum best suited to address and interpret the IDEA and to determine whether Michael can and should be reinstated

---

[3] On September 6, 2023, the District communicated with the Ferros and outlined the term of Michael's re-enrollment for purposes of compliance with PDE's communication, via a Notice of Recommended Educational Placement/Prior Written Notice (NOREP/PWN). This legal notice pointed the Ferros to Michael's procedural safeguards and their rights to challenge this proposed additional educational period and services under the IDEA.

as a student in the District as demanded by the Ferros' Complaint. *See* Complaint at ¶ 37.

52. The ultimate goal of the Ferros' Complaint is to restore Michael as a student at the District following his 22nd birthday, for the express purpose of the District providing a FAPE. The Local Educational Agency ("LEA") (e.g., Central York School District) is responsible for the provision of special education and related services for every student with a disability under the IDEA. The IDEA defines special education and related services for students with disabilities, and does so for Michael. *See* 34 C.F.R. §300.101. The Ferros' Complaint and ultimate redress is predicated on the interpretation and implementation of the IDEA and whether Michael qualifies for FAPE for any period beyond the day before his 22nd birthday, as those IDEA provisions have now been understood by the Pennsylvania Department of Education following the Department's resolution of the E.D. Pa. lawsuit.

53. Every student with a disability who is determined to be eligible under the IDEA is also protected by Section 504 of the Rehabilitation Act of 1973 and is entitled an equal opportunity to benefit from and participate in the LEA's educational services, aids, and benefits. 29 U.S.C. §794; 34 C.F.R. Part 104. Section 504 requires LEAs to ensure students with disabilities are not discriminated against, regardless of the nature or severity of those disabilities. *See* 34 C.F.R. § 104.33.

The Ferros' Complaint also directly implicates the non-discrimination obligations of Section 504.  *See* Complaint at ¶¶ 3, 10, 31, 44-52.

54. Therefore, based upon a plain reading of the Complaint, the District has met its burden of establishing that federal question jurisdiction applies to this matter.

## REMOVAL PROCEDURE

55. Removal of the above-captioned matter is timely under 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a) because this Notice of Removal is filed within thirty (30) days of receipt of the Complaint by the Defendants.

56. Removal is properly made to the United States District Court for the Middle District of Pennsylvania under §1441(a), because York County, where this action is pending, is within the Middle District of Pennsylvania.  *See* 28 U.S.C. § 118(c).

57. The Defendants will file written notice of the filing of this Notice of Removal with the Prothonotary of the Court of Common Pleas of York County concurrently with the filing of this Notice of Removal and will serve the same on Plaintiffs pursuant to 28 U.S.C. §1446(d).

58. This Notice of Removal is being filed on behalf of the Central York School District; and, therefore, unanimity among all Defendants as to removal exists.

WHEREFORE, by this Notice of Removal, Defendant hereby removes this action from the York County Court of Common Pleas and request that this action proceed as properly removed to this Court.

                                              STOCK AND LEADER

Dated:  10/3/2023              By:   */s/ Gregory W. Bair, II*
                                            Gregory W. Bair, II, Esquire
                                            I.D. No. 208156
                                            Brooke E.D. Say, Esquire
                                            I.D. No. 200044
                                            Gareth D. Pahowka
                                            I.D. No. 309184
                                            David M. Walker, Esquire
                                            I.D. No. 312560
                                            Susquehanna Commerce Center East
                                            221 West Philadelphia Street, Suite 600
                                            York, PA  17401
                                            Tel.:  (717) 846-9800
                                            Counsel for Central York School District

4864-2052-8259, v. 1